UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 15 CR 217 |
| v. | ) | |
| | ) | Judge Charles R. Norgle |
| RUBY MOHSIN and | ) | |
| MOHAMMAD KHAN | ) | |

# GOVERNMENT'S SANTIAGO PROFFER

The UNITED STATES OF AMERICA, by ZACHARY T. FARDON, United States Attorney for the Northern District of Illinois, respectfully submits this evidentiary proffer pursuant to *United States v. Santiago*, 582 F.2d 1128 (7th Cir. 1978), and moves that the Court admit coconspirator statements against defendants Ruby Mohsin and Mohammad Khan, pursuant to Federal Rule of Evidence 801(d)(2)(E).

## I. INTRODUCTION

This submission begins by providing an overview of the conspiracies that will be established at trial. It then discusses the law governing the admissibility of coconspirator statements under Rule 801(d)(2)(E), and outlines some of the evidence establishing the conspiracies in this case. Finally, it summarizes the evidence supporting the admission of coconspirators' statements. Based on the following, the government seeks admission of statements pursuant to Rule 801(d)(2)(E) and requests a pretrial ruling of admissibility from the Court, in accord with *United States v. Santiago*, 582 F.2d 1128, 1130-31 (7th Cir. 1978) and established practice in this

Circuit. *See United States v. Alviar*, 573 F.3d 526, 540 (7th Cir. 2009); *United States v. Harris,* 585 F.3d 394, 398, 400 (7th Cir. 2009).

## II. Overview of the Charges Including Conspiracies

Defendants Ruby Mohsin and Mohammad Khan are charged by indictment with misbranding and controlled substance analogue offenses in connection with their operation of the Cigar Box, a smoke shop in the Fox Valley Mall in 2011.

Specifically, defendants are charged with: (1) conspiracy to commit an offense against the United States, namely, with the intent to defraud and mislead, to introduce into and receive misbranded drugs in interstate commerce, in violation of 18 U.S.C. § 371 and 21 U.S.C. §§ 331(a) and (c), 333(a)(2), 352(a), (b), (e), and (f) (Count 1); (2) receiving misbranded drugs in interstate commerce and causing the delivery of such misbranded drugs to a customer for pay, in violation of 21 U.S.C. § 331(c), 333(a)(2), 352(a), (b), (e), and (f) (Counts 2-3); (4) conspiracy to possess with intent to distribute a controlled substance analogue, in violation of 21 U.S.C. §§ 841(a) and 846 (Count 4); and distribution of a controlled substance analogue, in violation of 21 U.S.C. § 841(a) (Counts 5-6).

As noted, the charges include two conspiracies: In Count One of the indictment, from approximately January 2011 up to August 12, 2011, the defendants conspired to sell numerous drugs (synthetic cannabinoids or marijuana) with false and misleading labeling as part of their business. For example, the defendants sold a variety of drugs as "incense," and "potpourri," and other misleading names, when those drugs were in fact intended to affect the structure and function of the human

body. The defendants also sold products that were misbranded in that they: (1) falsely indicated they were not intended for human consumption (when they were); (2) failed to identify accurately the package's contents and intended use; (3) failed to contain a label bearing the name and place of the business of the manufacturer, packer, and distributor; (4) failed to contain a label bearing the established name and quantity of each active and inactive ingredient; and (5) did not include adequate directions for use and did not bear adequate warnings as required by law. In both obtaining misbranded drugs from out-of-state suppliers and manufacturers and selling those drugs to customers, defendants intended to defraud and mislead regulators regarding the status of the products that they sold therefore avoid regulation while making a profit.

Also, as charged in Count Four of the superseding indictment, from March 1, 2011 to August 12, 2011, defendants conspired to possess with intent to distribute and to distribute synthetic drugs containing controlled substance analogues, *namely iAroma Hypnotic, iAroma Train Wreck, iAroma Mango, Head Trip* and *Kush Potpourri,* containing JWH-210 and JWH-122, knowing that these products were intended for human consumption.

## III. Governing Law

Rule 801(d)(2)(E) provides that a "statement" is not hearsay if it "is offered against a party" and is "a statement by a coconspirator of a party during the course and in furtherance of the conspiracy." Admission of such coconspirator statements against a defendant is proper where the government establishes by a preponderance

of the evidence that: (1) a conspiracy [or joint venture] existed; (2) defendant and the declarant were members of the conspiracy [or joint venture]; and (3) the statements were made during the course and in furtherance of the conspiracy [or joint venture]. *United States v. Cruz-Rea*, 626 F.3d 929, 937 (7th Cir. 2010).[1]

### A. <u>Existence of and Membership in the Conspiracy</u>

Under *United States v. Santiago*, 582 F.2d 1128 (7th Cir. 1978), the trial judge must preliminarily determine whether statements by a coconspirator of the defendant will be admissible at trial under Federal Rule of Evidence 801(d)(2)(E). In making this determination the judge must decide "if it is more likely than not that the declarant and the defendant were members of a conspiracy when the hearsay statement was made, and that the statement was in furtherance of the conspiracy . . . ." *Id.* at 1143 (quoting *United States v. Petrozziello*, 548 F.2d 20, 23 (1st Cir. 1977)); *see also United States v. Hoover*, 246 F.3d 1054, 1060 (7th Cir. 2001). If the Court determines the statements are admissible, the jury may consider them for any purpose. *United States v. Thompson*, 944 F.2d 1331, 1345 (7th Cir. 1991).

Under *Santiago*, the government must make a preliminary offer of evidence to show: 1) a conspiracy existed; 2) the defendant and declarant were members of the conspiracy; and 3) the statements sought to be admitted were made during and in

[1] No Sixth Amendment confrontation issues are posed by the use of a non-testifying coconspirator's statements, offered for their truth against a defendant. Such statements are not testimonial, and therefore are not subject to the Confrontation Clause. *United States v. Nicksion*, 628 F.3d 368, 374 (7th Cir. 2010) (citing *Davis v. Washington*, 547 U.S. 813, 823-24 (2006) and *Crawford v. Washington*, 541 U.S. 36 (2004)); *see also United States v. Hargrove*, 508 F.3d 445, 448-49 (7th Cir. 2007) (coconspirator statements are neither hearsay nor testimonial).

furtherance of the conspiracy. *Santiago*, 582 F.2d at 1134-35; *see also, e.g., United States v. Alviar*, 573 F.3d 526, 540 (7th Cir. 2009). According to *Bourjaily v. United States*, 483 U.S. 171, 176-81 (1987), the court can consider the statements in question (the statements to be admitted) to determine whether the three *Santiago* criteria have been met.

Seventh Circuit cases construing *Bourjaily* have held that properly admitted hearsay, including statements admitted under the coconspirator exception to the hearsay rule (Fed. R. Evid. 801(d)(2)(E)), may be used to prove what another person did or said that may demonstrate their membership in the conspiracy. *United States v. Loscalzo*, 18 F.3d 374, 383 (7th Cir. 1994) ("[W]hile only the defendant's acts or statements could be used to prove that defendant's membership in a conspiracy, evidence of that defendant's acts or statements may be provided by the statements of co-conspirators."); *United States v. Martinez de Ortiz*, 907 F.2d 629, 633 (7th Cir. 1990) (en banc).

While the Court may consider the proffered statements themselves as evidence of both the existence of a conspiracy and a defendant's participation in it, *United States v. Bourjaily*, 483 U.S. 171, 178, 180 (1987); *United States v. Harris*, 585 F.3d 394, 398-99 (7th Cir. 2009), the contents of the proffered statements alone are not sufficient to establish the existence of a conspiracy and a defendant's participation. There must also be some supporting evidence or facts corroborating the existence of the conspiracy and defendant's participation. *Harris*, 585 F.3d at 398-99. The evidence showing the existence of a conspiracy and a defendant's membership in it

may be either direct or circumstantial. *See United States v. Johnson,* 592 F.3d 749, 754-55 (7th Cir. 2010); *United States v. Irorere*, 228 F.3d 816, 823 (7th Cir. 2000).[2]

There is no requirement, for admissibility under Rule 801(d)(2)(E), that the government establish all elements of "conspiracy" such as a meeting of the minds and an overt act. *United States v. Coe*, 718 F.2d 830, 835 (7th Cir. 1983); *United States v. Gil*, 604 F.2d 546, 548-50 (7th Cir. 1979). The government need only establish the existence of a joint venture for an illegal purpose (or for a legal purpose using illegal means) and participation in the joint venture by the defendant and the maker of the statement at issue (as well as that the statement was in furtherance of the venture). "[I]t makes no difference whether the declarant or any other 'partner in crime' could actually be tried, convicted and punished for the crime of conspiracy." *Gil*, 604 F.2d at 549-550; *see also Coe*, 718 F.2d at 835.

While there is thus a distinction between conspiracy law and admissibility under Rule 801(d)(2)(E), certain principles of general conspiracy law are relevant to the Rule 801(d)(2)(E) inquiries. For instance, "[a] conspiracy may exist even if a

---

[2] The coconspirator statement rule does not apply when a statement is not being offered for the truth of the matter asserted, and thus does not constitute "hearsay" as defined by Rule 801(c). Accordingly, statements by alleged coconspirators may be admitted against a defendant, without establishing the *Bourjaily* factual predicates set forth above, when such statements are offered to show, for instance, the existence, the illegality, or the nature or scope of the charged conspiracy. *See United States v. Guyton*, 36 F.3d 655, 658 (7th Cir. 1994) (statement that defendant was out of cocaine was not hearsay because it was not offered for its truth but as evidence of membership in conspiracy); *United States v. Herrera-Medina*, 853 F.2d 564, 565-66 (7th Cir. 1988) ("war stories" about the drug trade were not offered for the truth); *United States v. Van Daal Wyk*, 840 F.2d 494, 497-98 (7th Cir. 1988) (statements had non-hearsay value in establishing knowledge of and membership in conspiracy); *United States v. Tuchow*, 768 F.2d 855, 867-69 (7th Cir. 1985) (pre-conspiracy statements admissible to set forth scope of the anticipated conspiratorial scheme).

conspirator does not agree to commit or facilitate each and every part of the substantive offense." *Salinas v. United States*, 522 U.S. 52, 63 (1997); *see also United States v. Longstreet,* 567 F.3d 911, 919 (7th Cir. 2009); *United States v. Jones*, 275 F.3d 648, 652 (7th Cir. 2001). The government need not prove that a defendant knew each and every detail of the conspiracy or played more than a minor role in the conspiracy. *United States v. Curtis*, 324 F.3d 501, 506 (7th Cir. 2003). Further, a defendant joins a criminal conspiracy if he agrees with another person to one or more of the common objectives of the conspiracy; it is immaterial whether the defendant knows, has met, or has agreed with every coconspirator or schemer. *Longstreet,* 567 F.3d at 919; *United States v. Jones*, 275 F.3d 648, 652 (7th Cir. 2001).

A defendant (or other declarant) may be found to have participated in a conspiracy even if he joined or terminated his relationship with other conspirators at different times than another defendant or coconspirator. *United States v. Noble*, 754 F.2d 1324, 1329 (7th Cir. 1985); *see also United States v. Handlin*, 366 F.3d 584, 590 (7th Cir. 2004) ("it is irrelevant when the defendant joined the conspiracy so long as he joined it at some point"). Under Rule 801(d)(2)(E), a coconspirator's statement is admissible against conspirators who join the conspiracy after the statement is made. *United States v. Sophie*, 900 F.2d 1064, 1074 (7th Cir. 1990). A conspirator who has become inactive or less active in the conspiracy nevertheless is liable for his conspirators' further statements unless he openly disavows the conspiracy or reports it to the police. *See United States v. Feldman*, 825 F.2d 124, 129 (7th Cir. 1987).

The government is not required to prove the identity of the declarant; nor must the declarant's identity be confirmed in the statement itself. *See United States v. Bolivar*, 532 F.3d 599, 604-05 (7th Cir. 2008). Rather, the government need only prove (from the statement, the context and/or other evidence) that the declarant was in fact a coconspirator. *Id.*

**B. <u>The "In Furtherance of" Requirement</u>**

In determining whether a statement was made "in furtherance" of the conspiracy, courts evaluate the statement in the context in which it was made and look for a reasonable basis upon which to conclude that the statement furthered the conspiracy. *See Cruz-Rea,* 626 F.3d at 937; *United States v. Johnson*, 200 F.3d 529, 533 (7th Cir. 2000). Under the reasonable basis standard, a statement may be susceptible to alternative interpretations and still be "in furtherance" of the conspiracy. *Cruz-Rea*, 626 F.3d at 937-38. The "coconspirator's statement need not have been made exclusively, or even primarily, to further the conspiracy" in order to be admissible under the coconspirator exception. *Id.* at 937 (quotations and citations omitted). That statements were made to a government cooperating witness or undercover agent does not bar admission of statements otherwise "in furtherance" of the conspiracy. *United States v. Mahkimetas*, 991 F.2d 379, 383 (7th Cir. 1993); *see also United States v. Ayala,* 601 F.3d 256, 268 (4th Cir. 2010).

"Courts have found a wide range of statements to satisfy the 'in furtherance' requirement." *United States v. Cozzo*, 2004 WL 1151630, *2-3 (N.D. Ill. 2004) (collecting cases). In general, a statement that is "part of the information flow

between conspirators intended to help each perform his role" satisfies the "in furtherance" requirement. *United States v. Alviar*, 573 F.3d 526, 545 (7th Cir. 2009) (quotations and citations omitted); *see also United States v. Gajo*, 290 F.3d 922, 929 (7th Cir. 2002). These include statements:

– to conduct or help to conduct the business of the scheme, *United States v. Cox*, 923 F.2d 519, 527 (7th Cir. 1991); *see also United States v. Johnson*, 200 F.3d 529, 533 (7th Cir. 2000);[3]

– to identify other members of the conspiracy and their roles, *Alviar,* 573 F.3d at 545; and

– to conceal a conspiracy where ongoing concealment is a purpose of the conspiracy, *Gajo*, 290 F.3d at 928-29; *United States v. Kaden*, 819 F.2d 813, 820 (7th Cir. 1987); *see also United States v. Maloney*, 71 F.3d 645, 659-60 (7th Cir. 1995).

Finally, it has long been the rule that any statement made by a conspirator during and in furtherance of a conspiracy is admissible against all coconspirators. *Beeson v. United States*, 90 F.2d 720 (7th Cir. 1937); *United States v. Lindemann*, 85 F.3d 1232, 1238 (7th Cir. 1996); *see also United States v. Rivera,* 136 F. Appx. 925, 926 (7th Cir. 2005) ("Whether any other conspirator heard (or, in this instance, saw) that statement is irrelevant; agency, not knowledge, is the theory of admissibility.")*.*

[3] Statements that prompt the listener to act in a manner that facilitates the carrying out of the conspiracy are also made "in furtherance" of the conspiracy. *See United States v. Monus*, 128 F.3d 376, 392 (6th Cir. 1997).

## IV. PROFFER OF EXPECTED GOVERNMENT'S EVIDENCE REGARDING THE EXISTENCE OF THE CHARGED CONSPIRACIES

### A. Overview of the Evidence

At trial, the government's evidence will prove that defendants Mohsin and Khan conspired with each other to sell misbranded drugs and to possess with intent to distribute and distribute a controlled substance analogue. Specifically, no later than January 2011 and continuing to approximately August 12, 2011, defendants conspired to obtain and sell synthetic cannabinoids and other drugs mislabeled as "incense" and "potpourri," and other misleading names at the Cigar Box in the Fox Valley Mall. Additionally, no later than March 1, 2011, defendants conspired to possess with intent to distribute and to distribute synthetic drugs containing JWH-210 and JWH-122, knowing that these products were intended for human consumption. In essence, defendant Mohsin owned and managed the business, handled the business' finances, ordered inventory from suppliers, and handled sales at the store —while Khan primarily sold products at the store.

### B. Existence of the Charged Conspiracies and Defendants' Membership

At trial, the government will demonstrate the existence of the charged conspiracies and defendants' membership through, among other items: (1) the testimony of fact witnesses who purchased synthetic marijuana products from defendants at the Cigar Box; (2) the testimony of law enforcement officers and agents including an undercover purchase of packages of *Head Trip* and *Kush Potpourri* containing JWH-122 made from the Cigar Box on August 4, 2011; (3) the results of laboratory testing of substances sold at the Cigar Box; (4) defendant Mohsin and

Khan's admissions to law enforcement; (5) and introduction of records including invoices and checks showing defendant Mohsin's purchase and payment for hundreds of packages of *iAroma* and *Zero Gravity* synthetic marijuana products from out-of-state suppliers Spaced Out Herbz and Tanus LLC.

**1. <u>Testimony from Cigar Box Customers</u>**

The government intends to introduce testimony from fact witnesses who purchased synthetic marijuana products from defendant Mohsin and Khan.

JQ will testify that he purchased synthetic marijuana products such as *iAroma*, *Head Trip*, *Red Magic* and *Zombie Acid Rain* at the Cigar Box along with friends when he was in high school. JQ has stated that his heart raced and he felt a sense of "panic" when he smoked too much of synthetic marijuana, which was "kind of scary." JQ spoke to a middle-aged male clerk at the Cigar Box – likely defendant Khan – about the types of "highs" that each product would provide.

Witness BR will testify that he was present with a group of teens that purchased synthetic marijuana at the Cigar Box in late winter or early spring 2011. When they entered the store they asked for synthetic marijuana and were directed by a middle-aged woman -- likely Ruby Mohsin – to the counter with the products they later smoked. Later, after smoking synthetic marijuana at a party BR's heart raced and he experienced paranoia and extreme anxiety.

Also, witness CM purchased synthetic marijuana at the Cigar Box. CM has stated that synthetic marijuana gave him a terrible feeling when he smoked it. CM also observed the effects the synthetic marijuana had on others.

In addition, witness EM purchased 3 one-gram packages of *iAroma* with Max Dobner from defendant Mohsin that contained JWH-210.

**2. Testimony from Law Enforcement**

The government intends to introduce testimony from an undercover Aurora police officer who made a purchase of synthetic marijuana products named *Head Trip* and *Kush Potpourri* containing JWH-122 from defendant Khan, who promoted the potent effects of the products.

**3. Lab Results**

The government will offer testimony of FDA forensic scientist Laura Ciolino that the *iAroma Hypnotic*, *Train Wreck* and *Mango* that defendant Mohsin sold witness EM and Max Dobner contained JWH-210.

The government will also offer testimony of former DuPage County forensic scientist (now with the DEA forensic laboratory) Sara Norris that the *Head Trip* and *Kush Potpourri* that defendant Khan sold Officer Hahn contained JWH-122.

**4. Mohsin's Cigar Box Records**

The government also intends to introduce Cigar Box records[4] at trial that show the purchase of and payment for misbranded drugs and controlled substance analogues. These records include but are not limited to:

* On February 3, 2011, Mohsin purchased 500 packages of *iAroma* at $2 a unit from Spaced Out Herbz, in Pleasant Valley, IA for a total cost of $1,000.

[4] Mohsin produced these records in connection with a civil case in DuPage County Circuit Court. As such, the government will offer the records as an admission of party opponent pursuant to Federal Rule of Evidence 801(2)(C) and (D).

* On February 10, 2011, Mohsin made an online payment of $1,000 from her account at Citizens Bank to Kevin Seydel, Pleasant Valley, IA.

* A Fed Ex shipping label dated February 21, 2011 showing that Seydel shipped a 2.3-pound package to the Cigar Box. A handwritten notation on the label reads “0 Gravity 200 pcs x 3.50, 50 Blueberry; 50 Watermelon; 50 Hypnotic; and 50 Strawberry.”

* On March 4, 2011, Mohsin made an online payment of $700 from her account at Citizens Bank to Seydel in Pleasant Valley, IA.

* A handwritten note dated March 1, 2011 stated “Received 500 pieces of Train Wreck from Kevin, 500 x 2 = 1000.00 Need to pay.” Another notation reads, “Paid 3/11/2011.”

* On March 16, 2011, Mohsin made an online payment of $1000 from her account at Citizens Bank to Seydel, Pleasant Valley, IA.

* A handwritten note dated March 10, 2011 stated “0 Gravity, 250 x 3 = 750.00 Received 3/10/11 Kevin. “Another notation reads, “Paid # 3223 3/20/2011.”

* On April 1, 2011, Mohsin made an online payment of $750 from her account at Citizens Bank to Kevin Seydel, P. O. Box 178, Pleasant Valley, IA.

* A handwritten note dated March 24, 2011 contained the names of several Zero Gravity and *iAroma* products and flavors totaling $1742.50 and the notation “Paid 4/7/2011.”

* On April 7, 2011, Mohsin made an online payment of $1742.50 from her account at Citizens Bank to Kevin Seydel, P. O. Box 178, Pleasant Valley, IA.

* Cigar Box check # 2017 dated May 29, 2011 in the amount of $850.

* An invoice dated June 1, 2011 showing that Mohsin purchased 600 packages of *iAroma* products from Suliman Tanus, dba Tanus LLC, including 200 one gram packages of *iAroma Hypnotic* for $1,200 and the handwritten notation “Paid 6/10/11.”

* Cigar Box’s online bill payment check #5093 dated June 10, 2011 in the amount of $850.

* An invoice dated June 16, 2011 showed that Mohsin purchased 204 packages of Zero Gravity products from Suliman Tanus, dba Tanus LLC, $738.

### 5. Mohammad Khan Admissions

On December 11, 2014, Mohammad Khan told FDA agents that he worked part-time at the Cigar Box for six or seven months in 2011. Khan stated that the store sold a product that came in little containers which Khan identified as "marijuana" for a very good profit. Khan recalled that they sold six or seven types of this product and that "young people" came into the store to purchase the products. Khan admitted that he knew customers smoked the product and that young customers spoke to him at the store about the effects of smoking the product. Customers described the effects as a "high" as well as "relaxing them." The customers told Khan what products they preferred and why. On many occasions, Khan observed an "older" person in the store purchasing these products while a "younger person" waited outside the store. Khan felt that the older person was purchasing the products for the younger person, but sold the product because the person in the store had proper identification.

## V. COCONSPIRATOR STATEMENTS

For purposes of this proffer, set forth below are statements of defendants Mohsin and Khan the government intends to introduce at trial that demonstrate the existence of the charged conspiracies, defendants' participation in those conspiracies, and those coconspirator statements made in furtherance of the charged conspiracies.

### A. Ruby Mohsin's Statements to EM and Max Dobner

On June 14, 2011, EM and Max Dobner visited the Cigar Box to purchase hookah. After the purchase of the hookah and coals, Ruby Mohsin pulled synthetic marijuana out of the display case and said to EM and Dobner, "Do you all want to

look at any of these? We just got them in." At the time Mohsin was pointing to the synthetic marijuana. Mohsin then said, "If you buy two, you get one free." EM and Dobner then purchased 3 1-gram packages of *iAroma* for $20.

**B. <u>Mohammad Khan's Statements While Selling Synthetic Marijuana in August 2011</u>**

The government also intends to present testimony of Mohammad Khan's sale of *Head Trip* and *Kush Potpourri* to an undercover Aurora police officer. Khan's statements promoting the products potency of the synthetic marijuana were in furtherance of the charged conspiracies and admissible as non-hearsay under Rule 801(d)(2)(E) as coconspirator statements. Also, Khan's own statements are admissible as party-admissions.

On August 4, 2011, Aurora Police Officer Jeffrey Hahn, who unbeknownst to Khan was acting in an undercover capacity, entered the Cigar Box and spoke to Khan. Khan was the only employee present in the store. Hahn asked whether he sold any products similar to K2 or K2 Blonde. Khan then motioned the officer to over to the rear counter where he retrieved a box from under the counter. Khan then removed a package called *Head Trip* and told the officer that it was very good and strong. When asked, Khan added that it had the same 'high' as K2, that it gave the same high as weed, and would not show up on a urine test. Khan added that he had tried *Head Trip* and liked its effects. Khan then removed *Kush Potpourri* from the box and told the officer that gave a very good high similar to that of marijuana. Khan then told the officer the price for the two packages was $30.

## VI. CONCLUSION

This proffer of evidence, which the government expects to introduce in its case-in-chief along with other evidence, demonstrates that defendants participated in a misbranding conspiracy, and conspired to possess with intent to distribute controlled substance analogues. The government respectfully submits that the evidence recited above establishes by a preponderance of the evidence that: (1) a conspiracy existed; (2) defendants Ruby Mohsin and Mohammad Khan, were members of the charged conspiracies; and (3) the statements the government intends to introduce at trial were made during the course of an in furtherance of the charged conspiracies.

WHEREFORE, the government respectfully moves this Court for a ruling that these statements are admissible against the defendant.

Respectfully submitted,

ZACHARY T. FARDON

United States Attorney

By: /s/ Matthew M. Schneider
MATTHEW M. SCHNEIDER
CHRISTINE O'NEILL
Assistant U.S. Attorneys
219 South Dearborn, Fifth Floor
Chicago, Illinois 60604
(312) 353-5300

Dated: January 23, 2017